IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **ANDREW & ALISA CROWDER** § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| vs § | Case No. 2:06 CV 114-VPM |
| § | |
| § | |
| **PMI MORTGAGE INSURANCE** § | |
| **COMPANY.,** § | |
| § | |
| **Defendants.** § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs Andrew and Alisa Crowder (hereinafter "Plaintiffs") filed suit under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") alleging that Defendant PMI Mortgage Insurance Co. ("Defendant" or "PMI") failed to issue them an "adverse notice" when they set the monthly premium amount for the mortgage insurance Plaintiffs were required to purchase. Under the FCRA, an "adverse notice" is required if the company using your credit information does not give you the best possible price they can offer. A failure to issue the adverse notice is a clear violation of the FCRA. 15 U.S.C.§ 1681m.

Defendant has not taken the position that their conduct is not actionable under the FCRA.[1] Instead, they have argued that because of recent Congressional changes to the

---

[1] The overwhelming authority makes it clear that Defendant is legally required to give an adverse notice to Plaintiffs under the circumstances described in the complaint. See the attached exhibits:

FCRA, the Plaintiffs (nor any other individual person) have no standing to enforce the protections Congress has provided them. The Defendant has also argued that declaratory and injunctive relief is not available to private litigants. Plaintiffs will concede that private litigants cannot obtain injunctive or declaratory relief under the FCRA, but strenuously deny that Plaintiffs cannot recover for the violations relating to a failure to receive an adverse notice.

I.      **FACTUAL ALLEGATIONS**

On or about July 26, 2004, Plaintiffs purchased a home in Jefferson County, Alabama and executed a mortgage to RBMG, Inc. During that same transaction, Plaintiffs paid PMI, and/or its agent, the first month's premium owed on the mortgage insurance policy they were required to purchase. (Complaint, ¶ 15). Based in whole or in part upon negative information contained in Plaintiffs' credit report, Defendant set the mortgage insurance premium for Plaintiffs at $313.15 per month. Said premium was not the lowest premium available from the Defendant. (Complaint, ¶ 16). This amount is approximately $250 *per month* more than what the mortgage broker told them to expect.

---

Exhibit A – Reynolds v. Hartford Fin. Serv. Group, Inc., 435 F.3d 1081, 1096 (9th Cir. 2006)(The statutory definition specifically includes denials and cancellations as well as increases in rates, and other unfavorable changes, whenever and by whomever made.")

Exhibit B – Preston v. Mortgage Guaranty Insurance Corporation of Milwaukee, Civil Action No. 5:03-cv-111-GRJ, *8-9 (M.D. Fla., December 19, 2003)("The Plaintiffs' facts, when read in a light most favorable to them and a plain reading of the statute, support a claim under the Fair Credit Reporting Act for either a negligent, see 15 U.S.C. § 1681o, or willful, see 15 U.S.C. § 1681n, violation of the Act."); *See also* Glatt v. The PMI Group, Inc., Civil Action No. 2:03-cv-326-FTM (M.D. Fla., January 2, 2004).

Exhibit C – FTC Staff Opinion Letters concerning the FCRA and "adverse notice" requirement.

II.     **MOTION TO DISMISS STANDARD**

A court should not dismiss a complaint for failure to state a claim unless it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also* Wright v. Newsome, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. Hishon, 467 U.S. at 73, 104 S.Ct. 2229. The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir.1985).

III.    **ARGUMENT**

Defendant argues that Congress abrogated private rights of action for violations of Section 1681m when they added 15 U.S.C. § 1681m(h)(8) as part of the 2003 FACTA amendments. Those amendments **became effective on December 1, 2004**, before the filing of this lawsuit. 16 C.F.R. § 602.1(c)(3) (setting forth December 1, 2004 as the effective date §311a of the FACTA Amendments.). The new Section 1681m(h)(8) provides:

---

Exhibit D – Federal Trade Commission's *Amicus Curiae* Brief, submitted in another case, arguing that adverse notice is required when the consumer doesn't get the lowest possible rate offered. This position was adopted by the 9th Circuit – see footnote 1.

3

>(8) Enforcement
>
>>(A) No civil actions. Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.
>
>>(B) Administrative enforcement. This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8) (the "enforcement provisions"). Plaintiffs do not contend that the enforcement provision changes did not eliminate private actions concerning conduct that arose after December 1, 2004. However, there is no reason to believe that the new changes bar private actions concerning conduct that **prior to December 1, 2004**.

### A. THE NEW CHANGES IN THE LAW DO NOT APPLY RETROACTIVELY SO AS TO PROTECT THE DEFENDANT FROM LIABILITY BASED ON THEIR PAST CONDUCT

#### 1. There is a strong presumption that any new changes do not apply retroactively.

In passing these new amendments to the FCRA, the Defendant does not suggest that Congress evidenced any intent to make the changes *retroactive*. As such, the United States Supreme Court precedent clearly establishes that *but for* some clear intent to make a law retroactive, the presumption is that it **is not** retroactive. Since Defendant's conduct became actionable at the time of the mortgage closing in July 2004, prior to the new laws' effective date, the Defendant is still subject to the private right of action that unquestionably existed at that time.

Plaintiff's argument against *retroactivity* starts with Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483 (1994). In Landgraf, the Supreme Court

4

analyzed whether an amendment to Title VII of the Civil Rights Act of 1964, which created a right to recover compensatory and punitive damages for certain Title VII violations, applied to a case that was pending on appeal when the statute was passed. Landgraf, 511 U.S. at 244.  The High Court held the statute did not apply, because its provisions would retroactively increase the defendant's liability for past conduct and impose a "new disability in respect to past events." Id. at 283.  In reaching its decision, the Court established a two pronged test for determining when a statute may be applied retroactively or to "pre-enactment conduct."  First, the court must determine whether Congress specifically set forth the statute's temporal reach. Id. at 280.  If the statute contains no express command (as in this case), the court must then determine whether application of the statute to pre-enactment conduct would "have retroactive effect." Id.  A statute has a retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id.  If a statute would have a retroactive effect, it does not govern absent evidence of clear congressional intent to the contrary. Id.

  Clearly, nothing in the plain meaning of the text indicates a congressional intent to make the new changes retroactive.  In further support of this position, it is important to note that in passing FACTA, Congress expressly declined to decide when the changes would take effect.  Instead, Congress left the question of the effective dates of the changes to the Board of Governors of the Federal Reserve System and the Federal Trade Commission - the administrative agencies authorized to promulgate regulations interpreting the provisions of the FCRA.  *See* Fair and Accurate Credit Transactions Act ("FACTA") *of 2003*, Pub. L. No. 108-159 §§ 2,3, 117 Stat. 1952 (2003).  Therefore, there

is no evidence that Congress expressed any intent regarding FACTA's temporal reach, much less that it should be applied retroactively. However, what is clear is that, "**the presumption against retroactive legislation** is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. (emphasis added.) Landgraf, 511 U.S. at 265.

The Supreme Court clarified its Landgraf holding in Hughes Aircraft Company v. United States, 520 U.S. 939, 117 S. Ct 1871 (1997) and also reiterated that, "this Court applies **the time-honored presumption against retroactive legislation** unless Congress has clearly manifested its intent to the contrary." (emphasis added). Id. at 939.  In Hughes, Congress amended the False Claims Act ("FCA") to permit *qui tam* suits to be brought on behalf of the United States under circumstances that were previously not allowed. Hughes, 520 U.S. at 943.  The plaintiff's claim was based on conduct that had occurred before the FCA's new changes, and was brought pursuant to the new provision permitting *qui tam* suits. Id.  Under the old version of the law, the Defendant's could have defended the instant action by arguing that it had put the government on notice of the conditions creating the liability.  Under the new law, that defense was no longer available. Id.

In resolving this "*gotcha*" effect, the Hughes court found that Congress had not specified its intent concerning the amendment's temporal reach.  They further concluded that the amendment had a retroactive effect since it eliminated a previously-available defense to *qui tam* suits and significantly increased the likelihood that defendants would be held liable by expanding the universe of potential plaintiffs to include private persons

"motivated primarily by prospects of monetary reward rather than the public good." Id. at 949.

The Hughes court believed that the change in identity of potential plaintiffs, and the consequent change in the applicable incentives to sue, "essentially created a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." Id. at 950.  Importantly, the Court rejected the argument that the amendment was only "jurisdictional," stating that a real jurisdictional statute is one that "simply changes the tribunal that is to hear the case." Id. at 951.  By contrast, the *qui tam* provision affected whether the suit could be brought at all, and thus affected the "substantive" rights of the parties. Id.

In the instant case, the exact same result holds true.  Plaintiffs' right to protect themselves and seek compensation for the clear violation they have suffered as a result of the erroneous negative credit information on their credit report is a substantive change, not a procedural one.  Under the Hughes analysis, the Defendant's have actually gained a new defense under the new changes, not a procedural argument such as where the lawsuit may be brought.  As was the case in Hughes, if the Court were to determine that the statute should be applied retroactively, then the logical inference to follow would be that the Plaintiff's harm would be maximized by having to pay the exorbitant insurance premium for a significant portion of the remaining term on their mortgage, which they cannot afford to pay.  In contrast, the Defendant's clear liability will have essentially evaporated into nothing.

### B. Other courts have upheld the same position that Plaintiffs' are now asserting.

In <u>Murray v. GMAC Mortgage Corp.</u>, 434 F.3d 948 (7th Cir. 2006) the Seventh Circuit specifically stated that the same FACTA amendments at issue in this case do not apply to conduct **occurring before the effective date** of the amendment. <u>Id</u>. at 951. Following the <u>Murray</u> court, and the U.S. Supreme Court precedent set out above, other district courts have concluded that the FACTA amendments do not apply to conduct that occurred prior to the effective date of the changes in the FCRA law. *See* <u>Phillips v. New Century Financial Corporation</u>, 2003 WL 517653 *6 (C.D. Cal, March 1, 2006)[2]; <u>Fisher v. Finance America, LLC</u>, Civil Action No. CV-05-0888-CJC (N.D. Cal., January 23, 2006 )(Attached as Exhibit "F"); <u>Parthiban v. GMAC Mortgage Corp.</u>, Civil Action No. CV-05-768-DOC (C.D. Cal., March 1, 2006)(Attached as Exhibit "G").

### IV. CONCLUSION

Because Defendant's wrongful conduct occurred prior to December 1, 2004, their liability arose prior to the effective date of the new FACTA changes, which was during a period when individuals could still pursue private actions. Since Congress did not evidence intent to make the new FACTA changes retroactive, the strong presumption against finding retroactivity is in full force. Applying the law retroactively would significantly impair the vested rights of the Plaintiffs to protect themselves against the victimization that has already occurred, and will continue to injure them for a significant

---

[2] Attached as Exhibit "E" – "The practical effect of the change is that an entire class of plaintiffs is eliminated, and defendants now face a significantly lesser chance of being held liable…Furthermore, despite Defendant's argument to the contrary, **it is clear that the focus should be on the date the conduct at issue took place**, **not the date that Plaintiff brought suit to effectuate her rights**" (citing <u>Hughes Aircraft</u>, 520 U.S. at 947)(emphasis added).

8

portion of their mortgage.  Similarly, the retroactive effect of the changes will allow the Defendant to escape any liability and/or give them no incentive to work with or resolve Plaintiffs' plight.

        /s/ Roman A. Shaul
_____
ROMAN A. SHAUL
One of the Attorneys for Plaintiffs

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone No.334.269.2343
Facsimile No.  334.954.7555

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing documents has been served on counsel listed below via the Court's CM/ECF electronic filing system on this the 16th day of March, 2006.

Mr. James A. Byram, Jr.
Ms. Kelly F. Pate
**BALCH & BINGHAM LLP**
Post Office Box 78
Montgomery, Alabama 36101-0078
Telephone No.334.834.6500
Facsimile No.  334.269.3115

        /s/ Roman A. Shaul
_____
OF COUNSEL