


# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| CLAY WILLIAM FISHER, | CASE NO. SACV 05-0888 CJC (RNBx) |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND TO STRIKE PORTIONS OF PLAINTIFF'S PRAYER FOR RELIEF |
| v. | |
| FINANCE AMERICA, LLC, | |
| Defendant. | |

Defendant Finance America, LLC ("Finance America") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice Plaintiff's claim for violation of the Fair Credit Reporting Act's "clear and conspicuous" statement requirement, contained in 15 U.S.C. Section 1681m(d). Defendant also moves pursuant to Federal Rule of Civil Procedure 12(f) to strike the portions of Plaintiff's Prayer for Relief that request declaratory and injunctive relief. Because application of a recent amendment to the FCRA, allegedly eliminating private rights of action for violations of the "clear and conspicuous" statement requirement, does not apply to conduct occurring before the amendment, Defendant's motion to dismiss is DENIED. However, as FCRA sections 1681n

Exhibit F

and 1681o do not provide private litigants injunctive or declaratory relief, Defendant's motion to strike is GRANTED as to the portions of Plaintiff's Prayer for Relief that seek such relief.

### A.  Background

The following facts are taken from the Complaint. This putative class action was brought by Plaintiff Clay William Fisher against Finance America, a lender which originates non-conforming residential mortgage loans nationwide. (Complaint, ¶ 2.) Finance America regularly obtains consumer reports on large numbers of individuals, without those individuals' knowledge or consent, by purchasing "prescreening" lists from consumer reporting agencies. (*Id.*, ¶ 3.) It then uses those lists to contact the named individuals by telephone or mail. (*Id.*)

Finance America obtained a consumer report on Plaintiff in October 2003, without Plaintiff's consent or knowledge. (*Id.* at ¶ 17.) Plaintiff did not initiate any transactions with Finance America. (*Id.* at ¶ 18.) Finance America then sent Plaintiff a standardized written solicitation, which stated:

> We have good news regarding your loan with your current mortgage lender! Based on our records, you have been pre-qualified for a home loan. Please call me today [at a specified number] to discuss the details.

(Complaint, ¶ 20.)

Based on this letter, Plaintiff filed the instant action on September 13, 2005. Plaintiff's Complaint alleges that the letter violates the FCRA, 15 U.S.C. § 1681 *et*

Exhibit F

*seq.*, because, among other things, it does not include a "clear and conspicuous" statement of particular information. Section 1681m(d) requires that, when a potential creditor uses a consumer report to solicit the consumer for a credit or insurance transaction the consumer did not initiate, the solicitation must include a "clear and conspicuous" statement informing the consumer that, among other things, she may prohibit information in her credit file from being used in connection with offers for credit or insurance transactions she did not initiate.[1] 15 U.S.C. § 1681m(d). Plaintiff's Prayer for Relief seeks class certification pursuant to Federal Rule of Civil Procedure 23,[2] statutory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs. (Complaint, Prayer for Relief.)

---

[1] The written solicitation must include a clear and conspicuous statement that "(A) information contained in the consumer's consumer credit report was used in connection with the transaction, (B) the consumer received the offer of credit or insurance because the consumer satisfied the criteria for credit worthiness or insurability under which the consumer was selected for the offer, (C) if applicable, the credit or insurance may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness or insurability or does not furnish any required collateral; (D) the consumer has a right to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit or insurance transaction that is not initiated by the consumer; and (E) the consumer may exercise the right referred to in subparagraph (D) by notifying a notification system as established under section 1681b(e) of this title." 15 U.S.C. § 1681m(d).

[2] Plaintiff's second cause of action is brought on behalf of a proposed sub-class comprised of:

> All individuals throughout the United States whose consumer reports were obtained or used by Defendants in connection with a credit transaction not initiated by them, and who received from Defendants a written solicitation to enter a credit transaction which did not provide the clear and conspicuous disclosures required by 15 U.S.C. § 1681(m)(d).

Exhibit F

Defendant moves to dismiss Plaintiff's claim for alleged violations of Section 1681m(d), on the ground that recent amendments to the FCRA contained in Section 311(a) of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (2003), eliminated a private right of action for alleged violations of the "clear and conspicuous statement" requirement. Defendant also moves to strike portions of Plaintiff's prayer for relief on the ground that declaratory and injunctive relief is not available to private litigants under the FCRA.

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A 12(b)(6) motion tests the sufficiency of the claims asserted in the complaint. *Sebastian Intern., Inc. v. Russolio*, 128 F. Supp. 2d 630, 634 (C.D. Cal. 2001). In ruling on such a motion, a court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). The issue on a 12(b)(6) motion is not whether the claimant ultimately will prevail, but whether the claimant is entitled to present evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

Defendant argues that Congress abrogated private rights of action for violations of Section 1681m in enacting 15 U.S.C. § 1681m(h)(8) as part of the

2003 FACTA amendments. Those amendments became effective on December 1, 2004, before the filing of this lawsuit. 16 C.F.R. § 602.1(c)(3) (setting forth December 1, 2004 as the effective date of § 311a of the FACTA Amendments.). The new Section 1681m(h)(8) provides:

> (8) Enforcement
>
> (A) No civil actions. Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.
>
> (B) Administrative enforcement. This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8) (the "enforcement provisions").[3] Plaintiff makes no argument that the enforcement provisions did not eliminate private causes of action, but instead contends that the enforcement provisions cannot bar his claim because their application to conduct that occurred before the FACTA amendment's enactment would have an impermissible retroactive effect. Plaintiff bases his retroactivity argument on *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S. Ct. 1483 (1994). For purposes of this discussion, the Court will assume that the enforcement provisions, if applicable, would bar Plaintiff's private cause of action for violation of Section 1681m(d). The question, then, is whether the enforcement provisions apply to Plaintiff's claim based on pre-enactment conduct.

---

[3] Sections 1681n and 1681o, which subsection 1681m(h)(8) makes inapplicable to actions for alleged violations of Section 1681m, are the sections of the FCRA that provide for private civil actions for willful and negligent noncompliance with the FCRA. 15 U.S.C. §§ 1681n; 1681o.

Exhibit F

In *Landgraf*, the Supreme Court analyzed whether an amendment to Title VII of the Civil Rights Act of 1964, which created a right to recover compensatory and punitive damages for certain Title VII violations, applied to a case that was pending on appeal when the statute was passed. *Langraf*, 511 U.S. at 244. The Court held the statute did not apply, because its provisions would retroactively increase the defendant's liability for past conduct and impose a "'new disability' in respect to past events." *Id.* at 283. The Court set forth a two-pronged test for determining when a statute may be applied to pre-enactment conduct. First, the court must determine whether Congress specifically set forth the statute's temporal reach. *Id.* at 280. If so, there is no need to inquire further. *Id.* If the statute contains no express command, however, the court must then determine whether application of the statute to pre-enactment conduct would "have retroactive effect." *Id.* A statute has a retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If a statute would have a retroactive effect, it does not govern absent evidence of clear congressional intent to the contrary. *Id.* Typically, statutes are held not to have a retroactive effect where they merely "authorize[] or affect[] the propriety of prospective relief," "confer[] or oust[] jurisdiction," or prescribe procedural rules. *Id.* at 174-75.

Applying the *Landgraf* test, the Court first examines the text of Section 1681m to determine whether Congress expressly set forth its temporal reach. Nothing in the enforcement provisions indicates any congressional intent as to when they should take effect, whether they should apply only prospectively, or whether they should apply to pre-enforcement conduct. Nor does anything in the rest of Section 1681m address the enforcement provisions' applicability to such conduct, or to actions commenced either before or after FACTA's effective date.

Exhibit F

Indeed, in passing FACTA Congress expressly declined to decide when the Act would take effect, leaving the question of the Act's provisions' effective dates to be determined by the Board of Governors of the Federal Reserve System. Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159 §§ 2, 3, 117 Stat. 1952 (2003). The regulation setting forth the enforcement provisions' effective date does not resolve the temporal reach question: it merely states that "[t]he applicable provisions of the [FACTA] shall be effective in accordance with the following schedule," and lists Section 311(a) as having an effective date of December 1, 2004. 16 C.F.R. § 602.1(c)(3). Thus, the Court concludes that Congress did not clearly express any intent regarding FACTA Section 311(a)'s temporal reach.

The second question is whether application of the enforcement provisions to Plaintiff's Section 1681m(d) claim would have a retroactive effect. Plaintiff argues that there would be such an effect, because application of the amendment would impair rights that Plaintiff, and other consumers, had when they received the credit solicitations – i.e. the right to sue for violations of the "clear and conspicuous" requirement. (Opposition, p. 5.) In support of its position Plaintiff cites *Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000), for the proposition that an amendment to a statute eliminating a private right of action under a particular law has a retroactive effect.

In *Scott*, the Ninth Circuit addressed Section 107 of the 1995 Private Securities Litigation Reform Act ("PSLRA") which amended 18 U.S.C. § 1964(c) to preclude plaintiffs from suing under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for conduct actionable as fraud in the purchase or sale of securities. *Scott*, 215 F.3d at 942. Two years after the PSLRA's 1995 effective date, the *Scott* plaintiff filed a complaint containing a RICO claim based

Exhibit F

on alleged securities fraud that had occurred two years before the PSLRA was passed. *Id.* at 942. After determining that Congress had not expressly provided for the temporal reach of the PSLRA's amendment to RICO, the Ninth Circuit held that the amendment's application would have a retroactive effect because it would impair rights the plaintiff possessed when he acted – *i.e.* when he became a victim of the defendant's alleged fraudulent misrepresentations. *Id.* at 944-45. This impairment arose from the fact that "prior to the PSLRA a plaintiff had a RICO claim based on a defendants' alleged securities fraud, while afterwards a plaintiff does not." *Id.* at 945. The Ninth Circuit also rested its holding on an alternative test, under which a statute has retroactive effect if it attaches new legal consequences to events completed before its enactment. *Id.* at 946. The Ninth Circuit rejected the defendants' argument that the amendment was merely a "jurisdictional change," pointing out that it did more than merely change the tribunal authorized to hear the case, instead affecting "all attempts to bring RICO claims based on securities fraud in federal and state court." *Id.*

Also on point is *Hughes Aircraft Company v. United States*, 520 U.S. 939, 117 S. Ct. 1871 (1997). There, the Ninth Circuit addressed an amendment to the False Claims Act ("FCA"), which permitted qui tam suits to be brought on behalf of the United States in circumstances in which such suits previously had not been allowed, and which circumstances existed in the plaintiff's case. *Hughes*, 520 U.S. at 943. The plaintiff's claim was based on conduct that had occurred before the FCA's enactment, and was brought pursuant to the new provision permitting qui tam suits. *Id.* After finding no evidence of express Congressional intent regarding the amendment's temporal reach, the Court held that the amendment had a retroactive effect because it eliminated a previously-available defense to qui tam suits, and significantly increased the likelihood that defendants would be held liable by expanding the universe of potential plaintiffs to include private persons

Exhibit F

1  "motivated primarily by prospects of monetary reward rather than the public
2  good." *Id.* at 949. The change in the identity of potential plaintiffs, and the
3  consequent change in the applicable incentives to sue, "essentially create[d] a new
4  cause of action, not just an increased likelihood that an existing cause of action
5  will be pursued." *Id.* at 950. As in *Scott*, the Court rejected the argument that the
6  amendment was jurisdictional, stating that a jurisdictional statute is one that
7  "simply changes the tribunal that is to hear the case." *Id.* at 951. The qui tam
8  provision, by contrast, affected whether the suit could be brought at all, and thus
9  affected the substantive rights of the parties. *Id.*

11  This case is governed by *Scott* and *Hughes Aircraft*. Like the PSLRA
12  provision in *Scott*, FACTA Section 311 takes away a previously-available cause of
13  action from private plaintiffs and attaches new legal consequences to pre-
14  enactment conduct. Before FACTA was passed, a consumer receiving an
15  unsolicited credit solicitation could sue for failure to include a "clear and
16  conspicuous" statement, whereas under the current law she cannot.[4] Consumers
17  who received illegal credit solicitations before FACTA's enactment, and who then
18  had a right to sue, would suffer an impairment of that right were the enforcement
19  provisions applied to their claims. As in *Hughes Aircraft*, the dramatic change in
20  the identity of potential plaintiffs – in this case, removal of the powerful profit
21  incentive for suit – would affect the substantive rights of the parties by essentially
22  eliminating an entire cause of action and subjecting defendants to a much
23  decreased likelihood of liability.

25  Defendant makes several arguments in favor of FACTA's applicability to
26  this case. First, it argues that no retroactive effect is possible, because

---

[4] *The enforcement provisions provide that the "clear and conspicuous" requirement is to be enforced only administratively.* 15 U.S.C. § 1681m(h)(8); 1681s.

9

Exhibit F

1  retroactivity properly is measured according to the date the plaintiff filed suit
2  rather than the date of the defendant's allegedly illegal conduct. Defendant argues
3  that, since the provision in issue is Section 1681m(h)(8), which governs which
4  plaintiffs may sue, the "conduct" in issue is filing suit rather than Defendant's
5  sending of credit solicitations. (Reply, pp. 2-3.) Hence, Defendant argues, the
6  "dispositive conduct" is Plaintiff's post-enactment filing of this case. (Reply, p.
7  3.) Because Plaintiff filed its Complaint after FACTA took effect on December 1,
8  2004, Defendant argues, there is no restrospective application of FACTA.
9
10     Defendant's argument was expressly rejected in *Scott*. There, the defendant
11 argued that the PSLRA "must apply to cases filed after its effective date,
12 regardless of when the alleged conduct that serves as the basis for the claim took
13 place [and] . . . that the pertinent date is the date of filing, not the date of conduct."
14 *Scott*, 215 F.3d at 949. The Ninth Circuit refused to adopt this rule, on the
15 grounds that "[t]he *Landgraf* test . . . appears to focus on parties' actions, not the
16 date of filing of the claim." *Id*. at 949. Nor can *Scott be* distinguished on the basis
17 that the "conduct" regulated by the amendment in issue here is the bringing of suit:
18 the RICO amendment in issue in *Scott* also regulated what class of plaintiffs could
19 sue under a given statute.
20
21     Defendant cite *Salisbury v. S.B. Power Tool (In re Industrial Freight*
22 *System, Inc.)*, 191 B.R. 825 (C.D. Cal.), *ABF Capital Management v. Askin*
23 *Capital Management*, 957 F. Supp. 1308 (S.D.N.Y. 1997), and *Pedreyra v.*
24 *Cornell Prescription Pharmacies*, 465 F. Supp. 936 (D. Colo. 1979) for the
25 proposition that the filing date controls and that the elimination of a previously-
26 available remedy should be applied to cases filed after the change in the law.
27 (Reply, pp. 4-5.) However, these cases cannot carry the weight Defendant
28 attempts to place on them. *Salisbury*, in addition to not constituting controlling

Exhibit F

1 authority, appears to be in direct conflict with the Ninth Circuit's subsequent
2 holding in *Scott*. In *Salisbury*, the court stated that *Landgraf* properly applied only
3 to cases pending on a statute's effective date, rather than those filed after that date.
4 *Id.* at 829. However, the Ninth Circuit expressly disagreed with this reading of
5 *Landgraf*, affirmed that the *Landgraf* test "focuses on the 'events' necessary to the
6 suit" rather than the "event" of filing a complaint, and stated that "[t]he date of
7 filing a claim does not appear relevant" to the applicability of the retroactivity
8 analysis. *Scott*, 215 F.3d at 949. *Askin Management* has been similarly criticized:
9 in *Scott*, the Ninth Circuit expressly rejected *Askin Management*'s holding that the
10 PSLRA merely effected a change in the "remedy" available to a securities fraud
11 plaintiff and stated that, contrary to that case's characterization, "the PSLRA in
12 fact eliminates RICO as a cause of action." *Id.* at 947.

14      Defendant's other cited case, *Pedreyra*, appears to be in conflict with
15 *Hughes Aircraft*: the district court in *Pedreyra* held that an amendment to the
16 Equal Pay Act allowing private plaintiffs to bring suits against employers, where
17 only the Secretary of Labor previously had been authorized to do so, was merely
18 an amendment to the act's remedies and thus only a "procedural change" with no
19 retroactive effect. *Id.* at 944. The subsequently-decided *Hughes Aircraft* decision,
20 however, stands for the proposition that a dramatic change in the universe of
21 plaintiffs permitted to sue under a particular statute is more than a procedural
22 change, and is tantamount to the creation of an entirely new cause of action that
23 affects the parties' substantive rights. Under *Hughes Aircraft*, such a change has a
24 retroactive effect when applied to pre-enactment conduct and should not be
25 applied to such conduct even where the plaintiff filed its complaint after the
26 change in the law. *Hughes Aircraft*, 520 U.S. at 950.

28      Indeed, to use the filing date as the relevant date for purposes of the

Exhibit F

1  retroactivity analysis would run afoul of the concerns that motivated *Landgraf's*
2  holding. If the filing date were the only relevant date for an amendment
3  expanding the universe of plaintiffs who could sue under a particular statute, a
4  defendant who had engaged in conduct before the statute was enacted, but who is
5  sued after enactment, would suddenly be subject to liability much greater than the
6  potential liability existing at the time it engaged in the conduct. This would
7  contravene the primary consideration behind the presumption against retroactivity
8  – i.e. the "unfairness of imposing new burdens on persons after the fact."
9  *Landgraf*, 511 U.S. at 270-71. In short, the Court rejects Defendant's argument
10 that the filing date is the pertinent one for purposes of the retroactivity analysis.
11
12         Defendant further argues that, even if the *Landgraf* analysis applies, the
13 FACTA has no retroactive effect because Plaintiff did not take any action in
14 reliance on the law as it existed before FACTA. (Reply, p. 6.) In support of its
15 argument that reliance is the key inquiry, Defendant cites an unpublished decision
16 from this district, *Phillips v. New Century Financial*, SACV 05-0692 (C.D. Cal.,
17 Nov. 9, 2005), and the Ninth Circuit case *Southwest Center for Biological
18 Diversity v. United States Dept. of Agriculture*, 314 F.3d 1060 (9th Cir. 2002). In
19 *Southwest Center*, the Ninth Circuit addressed an amendment to the Freedom of
20 Information Act ("FOIA"), that allowed the government to withhold from the
21 public in response to a FOIA request certain information that it previously had
22 been required to provide. *Southwest Center*, 314 F.2d at 1061. The plaintiffs filed
23 a FOIA request with the U.S. Forest Service before the amendment's passage, and
24 sued the Forest Service when they did not receive all the information they had
25 asked for. *Id.* The amendment to FOIA was passed while the action was pending.
26 *Id.* The Ninth Circuit held the amendment applied, even though the denial of
27 information occurred before the act's passage, because the plaintiffs had taken no
28 action in reliance on the law as it existed at the time of their request – *i.e.* they

Exhibit F

merely had requested information. *Id.* at 1062.[5] Thus, the Ninth Circuit held, application of the new law would not impair any right the plaintiff "possessed when [it] acted." *Id.*

*Phillips* addressed the exact question at issue in this case: whether FACTA § 311(a) applies to a suit based on conduct occurring before FACTA's enactment. The court in *Phillips* held that it did, reasoning that "Plaintiff did not take any action in reliance on the law as it existed before FACTA." *Phillips*, SACV 05-0692, slip op. at 6. The court cited *Southwest Center* and held that the plaintiff's "only action was to sue for violations of section 1681m(d) after FACTA had already made Plaintiff ineligible to do so." *Id.* at 7. The court also pointed out that the plaintiff in that case had taken nearly nine months to file suit after the alleged violation and over seven months after section 311(a) of FACTA became effective, which indicated to the court that the plaintiff had relied even less than the plaintiffs who filed suit before the relevant amendment in *Southwest Center*. *Id.*

The Court respectfully declines to follow *Phillips*. First, *Scott* is the case most analogous to this one, and under *Scott* the elimination of a private cause of action that existed at the time of the alleged wrongful conduct has an impermissible retroactive effect even if the plaintiff waited until after the amendment to sue. In addition, *Southwest Center* is distinguishable from this case. Unlike in *Southwest Center*, application of the new law in this case would impair rights Plaintiff "possessed when he acted." Before FACTA was passed, as

---

[5] Although the Ninth Circuit did not explicitly say so, its holding appears to rest on a finding that the plaintiffs would have made the FOIA request even if the amendment limiting the information they could receive had been in effect at the time they made that request.

Exhibit F

now, the FCRA gave consumers the option to opt out of having their names included in lists submitted by credit reporting agencies in connection with firm offers of credit. 15 U.S.C. § 1681b(e)(1)-(2). The "clear and conspicuous" provision served to ensure that consumers were notified of that right. Before FACTA's passage, citizens who chose not to opt out had a private right of action for violations of Section 1681m(d)'s the "clear and conspicuous" provision. *See Hughes Aircraft*, 520 U.S. at 949 (*quoting United States ex rel. Macus v. Hess*, 317 U.S. 537, 541 n.5, 63 S. Ct. 379, 383 n.5 (1943)) (noting that provisions allowing private plaintiffs to sue result in vigorous enforcement of statutes containing such provisions). Thus Plaintiff in this case, and any putative class members, "acted" before FACTA's passage by not exercising their right to "opt out" from having their names given to credit reporting agencies to be used for certain credit and insurance solicitations. At the time they "acted" by not opting out, they had the right to bring a private cause of action for violation of the "clear and conspicuous" requirement. Application of FACTA to bar Plaintiff's cause of action thus would impair a right – the right to sue – he had when he "acted" by not exercising his right not to opt out of having his name distributed to potential lenders.[6] *See Murray v. GMAC Mortgage Corp.*, 2006 WL 90081 (7th Cir., Jan. 17, 2006) (FACTA amendment eliminating private causes of action for the "clear and conspicuous" requirement does not apply to offers made before its effective date).

---

[6] While Defendant argues that Plaintiff took no action in "reliance" on the existence of a private right of action, Plaintiff's decision not to bar credit agencies' use of his name could well have been made in reliance on the fact that the existence of a private cause of action guaranteed strong policing of the "clear and conspicuous" requirement. Knowing this, Plaintiff may have decided to allow credit agencies to obtain his name because he expected that any solicitations he received would contain all required information.

14

Exhibit F

For the foregoing reasons, the Court holds that FACTA § 311(a) would have a retroactive effect if applied to this case. No clear congressional intent appearing to the contrary, the Court applies *Landgraf*'s presumption against retroactivity. FACTA § 311(a) does not bar Plaintiff's claim under 15 U.S.C. § 1681m(d).[7]

C.   **Motion to Strike**

Defendant also moves to strike paragraphs (c), (d), and (e) of Plaintiff's Complaint, which request injunctive and declaratory relief, on the ground that such relief is not available under the FCRA. Indeed, Defendant's argument has been accepted by numerous courts. *See, e.g., White v. First American Registry, Inc.*, 378 F. Supp. 2d 419, 424 (S.D.N.Y. 2005) (dismissing plaintiff's claims for injunctive and declaratory relief under the FCRA, and stating "the absence of any express provision for injunctive relief in Sections 1681n and 1681o, coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it."); *Washington v. CSC Credit Services, Inc.*, 199 F. 3d 263, 268-69 (5th Cir. 2000) (same); *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525, 527 (E.D. Va., 1998); *Mangio v. Equifax, Inc.*, 887 F. Supp. 283, 184-85 (S.D. Fla. 1995) (FCRA's civil liability sections do not allow private plaintiffs to obtain injunctive relief, because they do not authorize private plaintiffs to enforce FCRA "compliance"). *But see Andrews v. Trans Union Corp., Inc.*, 7 F. Supp. 2d 1056, 1084 n.33 (C.D. Cal. 1998) ("The FCRA contains no 'clear command' that injunctive relief is unavailable;

---

[7] Because the Court holds that FACTA § 311(a) does not bar Plaintiff's claim, the Court need not reach Plaintiff's additional argument that his action is permitted by FACTA's General Saving Statute, contained in 1 U.S.C. § 109.

15

Exhibit F

1  consequently, it is available."), *rev'd in part and aff'd in part on other grounds in*
2  *Andrews v. TRW, Inc.*, 378 F. Supp. 2d 419 (9th Cir. 2001)).

4  A similar result was reached in *Howard v. Blue Ridge Bank*, 371 F. Supp.
5  2d 1139, 1145 (N.D. Cal. 2005). There, after acknowledging a split of authority
6  on the issue, the court concluded that the FCRA contained a "clear command"
7  from Congress sufficient to overcome courts' normally-presumed equitable power
8  and preclude the availability of injunctive relief to private plaintiffs under the
9  FCRA. *Howard*, 371 F. Supp. 2d at 1145. The court relied on that fact that
10 Sections 1681n and 1681o expressly provide for actual damages, punitive
11 damages, costs, and attorneys' fees, but omit any mention of injunctive or
12 declaratory relief. *Id.* The court also pointed out that, elsewhere in the FCRA,
13 declaratory and injunctive relief are mentioned and available only to the FTC or
14 other enforcing agencies. *Id.* Specifically, the court noted that § 1681u, enacted
15 after sections 1681n and 1681o, expressly states that "in addition to any other
16 remedy contained in this section, injunctive relief shall be available." *Id.* Indeed,
17 Congress' express provision for injunctive relief in Section 1681u, after it had
18 passed Sections 1681n and 1681o without any such express provision, suggests
19 that the latter sections were not intended to provide any relief beyond what is
20 expressly mentioned in their text. The Court adopts the persuasive reasoning of
21 *Howard* and the other cases cited above, and holds that Section 1681n and 1681o
22 do not permit Plaintiff to obtain declaratory or injunctive relief.

24 Plaintiff argues that Defendant's motion to strike is improper, because
25 "[m]otions to strike under Fed. R. Civ. P. 12(f) are meant to address 'redundant,
26 immaterial, impertinent, or scandalous matter' and are intended to avoid
27 expenditure of time and expense." (Opposition, p. 11.) Plaintiff contends that his
28 Complaint contains no "matter" meeting the description set forth in Rule 12(f),

Exhibit F

1  and that his Prayer for Relief does not pose any risk of undue expenditure of time
2  or expense. However, Defendant's motion is proper. Rule 12(f) may be used to
3  strike prayers for relief that seek remedies which are unavailable as a matter of
4  law, on the grounds that such remedies are "immaterial." *Darby v. City of*
5  *Torrance*, 810 F. Supp. 271, 272-73 (C.D. Cal. 1992) (*reversed on other grounds*,
6  46 F.3d 1140 (9th Cir. 1995)). Indeed, motions to strike have been granted as to
7  portions of prayers for relief identical to Plaintiff's. *Howard*, 371 F. Supp. 2d at
8  1146.

### D. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's second cause of action is DENIED. Defendant's motion to strike paragraphs (c), (d), and (e) of Plaintiff's Prayer for Relief is GRANTED.

DATED: January 23, 2006

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

Exhibit F