UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 05-768 DOC (MLGx)                                    Date: March 1, 2006

Title: VASUKI PARTHIBAN ET AL. v. GMAC MORTGAGE CORPORATION dba DITECH.COM

---

DOCKET ENTRY
[I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date]
                                                           Date:_____ Deputy Clerk:_____

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Kristee Hopkins                                              Not Present
   Courtroom Clerk                                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

   NONE PRESENT                                              NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART
                          DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
                          SECOND THROUGH SIXTH CAUSES OF ACTION

   Before the Court is Defendant GMAC Mortgage Corporation's ("GMAC") Motion to Dismiss Plaintiff's Second Through Sixth Causes of Action ("Motion"). The Court finds the matter is appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for February 27, 2006 was removed from the Court's calendar. After reviewing the moving, opposing, and replying papers, and for the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Motion.

I.    BACKGROUND

   Plaintiff brought this class action lawsuit against GMAC on August 5, 2005, asserting violations of two provisions of the Fair Credit Reporting Act ("FCRA"), namely section 1681b(c) and section 1681m(d). Plaintiff alleges that in or about July of 2004, Defendant obtained Plaintiff's

---

MINUTES FORM 11 DOC                    Initials of Deputy Clerk ᴊʜ
CIVIL - GEN                                                Page 1 of 10

Exhibit G

consumer report without Plaintiff's knowledge or consent, and after doing so, mailed Plaintiff a written solicitation to enter into a home mortgage transaction.

Plaintiff alleges that Defendant's actions violate two separate provisions of the FCRA. First, Plaintiff claims that Defendant, in violation of 15 U.S.C. section 1681b(f), used Plaintiff's consumer report in the absence of one of the permissible purposes listed in 15 U.S.C. section 1681b(c). The basis for Plaintiff's argument is that, for transactions not initiated by a consumer, the FCRA only permits the use of an individual's consumer report under limited circumstances. One such circumstance is where the credit issuer intends to extend to the consumer a "firm offer of credit," i.e., one that will be honored if the consumer meets specific criteria used to select the consumer for the offer. Plaintiff contends that Defendant's solicitation does not qualify as a firm offer of credit because it fails to set forth any actual terms, such as an interest rate, method of computing interest, or length of repayment, and is thus too vague to constitute any offer whatsoever. Plaintiff also alleges that Defendant violated the FCRA by sending out solicitations which failed to provide, in a clear and conspicuous manner, the consumer rights disclosures mandated under 15 U.S.C. section 1681m(d).

Plaintiff therefore asserts six causes of action. Claims one and two are for violations of 15 U.S.C. sections 1681b(f) and 1681m(d), respectively. Claims three and four seek a declaration that Defendant's actions constituted violations of the same aforementioned FCRA sections. Claims five and six request injunctive relief to keep Defendant from violating sections 1681b(f) and 1681m(d), respectively, in the future. Defendant's Motion seeks dismissal of the second, third, fourth, fifth, and sixth causes of action under Rule 12(b)(6).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory).

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *Balistreri*, 901 F.2d at 699; *Cadillac Fairview v. Dow Chem. Co.*, 840 F.2d 691, 693 (9th Cir. 1988).

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d

Exhibit G

750, 758 (9th Cir. 2003); *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000) (stating that a plaintiff should be given the opportunity to amend the complaint to overcome the deficiency unless it is clear from the complaint that an amendment cannot remedy the deficiency).

### III.   DISCUSSION

#### A.   Private Right of Action Under FACTA

To determine whether Plaintiff properly states a claim in her second cause of action, the Court must engage in a two-step inquiry: (1) whether there is a private right of action under 15 U.S.C. § 1681m(d) after the law was amended in 2003, and (2) if so, whether the amendment applies to Plaintiff.

##### 1.   Private Rights of Action Under 15 U.S.C. § 1681m(d) After FACTA

Defendant moves to dismiss Plaintiff's second cause of action on the grounds that the Fair and Accurate Transactions Act ("FACTA"), which was enacted in 2003 and amended the FCRA, eliminated private rights of action for violations of section 1681m(d). Specifically, Defendant contends that section 311(a) of FACTA, Pub. L. No. 108-159, 117 Stat. 1952 (2003), amended the FCRA to vest government agencies with exclusive jurisdiction to enforce section 1681m and all of its subsections.

As amended by FACTA, section 1681m of the FCRA now includes the following language at the end of that section:

> (8) Enforcement
>
> (A) No civil actions. Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with *this section.*
>
> (B) Administrative enforcement. *This section* shall be enforced exclusively under section 1681s by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8) (emphasis added). The language of section 1681m(h)(8) is direct and unambiguous; Congress's intent in inserting this provision was clearly to foreclose private rights of action for violations of at least a portion of section 1681m. The problem, however, is that while Congress placed this enforcement provision within subsection 1681m(h), the repeated reference to "this section" suggests that the provision applies to the whole of section 1681m. Thus, the issue is whether the enforcement provision applies to section 1681m in its entirety, or only to subsection 1681m(h).

This issue has been thoroughly addressed by the courts in the Northern District of Illinois. *See Pietras v. Curfin Oldsmobile, Inc.*, 2005 WL 2897386 (N.D. Ill. Nov. 1, 2005); *Murray v. Cross Country Bank*, 2005 WL 2644961 (N.D. Ill. Aug. 15, 2005); *Murray v. Household Bank (SB), N.A.*, 386

Exhibit G

F. Supp. 2d 993 (N.D. Ill. 2005); *see also Phillips v. Accredited Home Lenders Holding Co.*, No. SA CV 05-0851, slip op. 3-4 (C.D. Cal. Dec. 9, 2005). In each of these cases, the court held that the enforcement provision was meant to apply to section 1681m in its entirety.

The Court agrees with the well-reasoned decisions of the Northern District of Illinois, and concludes that Congress intended the enforcement provision to apply to the whole of section 1681m. Plaintiff's argument that the enforcement provision was meant to apply solely to subsection 1681m(h) is untenable on several grounds. First, when construing statutory language, the Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146 (1992). Accordingly, the Court will presume that Congress, in using the word "section," meant section—not "subsection." Second, the fact that Congress distinguished between "sections" and "subsections" throughout section 1681m strongly suggests that it acknowledged the different meanings of these terms. *See Duncan v. Walker*, 533 U.S. 167, 173, 121 S. Ct. 2120 (2001) (stating the presumption that Congress acts "intentionally and purposefully" in using particular statutory language); *Cross Country Bank*, 2005 WL 2644961, at *1 (finding that, in drafting the FCRA, Congress appreciated the different meanings of the terms "section" and "subsection"). For example, just within section 1681m, Congress refers to 1681o, 1681n, and 1681s as "sections," while referring to 1681m(f)(2) and 1681m(h)(3) as "subsections." *See id.* at *1.

Third, the context of the enforcement provision further supports the Court's conclusion. The provision is the only portion of section 1681m that speaks to enforcement. Interpreting it to apply only to subsection (h) would leave the courts with no guidance as to who is entitled to sue for violations of the remaining subsections of section 1681m. Finally, interpreting "this section" to mean "this subsection" would generate absurd results. If the Court were to interpret the term "section" to mean "subsection" in section 1681m(h)(8), the Court would have to give the same meaning to the six other references to "this section" in section 1681m. One such reference appears in section 1681m(c), which provides:

> (c) Reasonable procedures to assure compliance. No person shall be held liable for any violation of *this section* if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of *this section*.

15 U.S.C. § 1681m(c) (emphasis added). Interpreting "section" to mean "subsection" in this provision would render section 1681m(c) nonsensical, since the provision itself sets forth no rules for compliance or violation. *See Pietras*, 2005 WL 2897386, at *4-5 (finding that interpreting "section" to mean "subsection" would lead to absurd results). To avoid such results, the Court must give the term "section" its plain meaning.

For these reasons, the Court finds that the enforcement provision found in section 1681m(h)(8) applies to the entirety of section 1681m, including, of course, section 1681m(d). Thus, the

Court concludes that Congress eliminated the private right of action under section 1681m through the passage of FACTA.

### 2. Retroactivity of the Elimination of the Private Right of Action

Plaintiff argues that it is irrelevant whether FACTA eliminated the private right of action under section 1681m because Plaintiff received the letter in question in July 2004, *see* Compl. ¶¶ 25-26, prior to the December 1, 2004 effective date of the amendments, *see* 16 C.F.R. § 602.1(c)(3). The Court notes initially that the Seventh Circuit is the only court of appeal to have decided this issue, finding that the amendment does not apply retroactively to credit offers made before FACTA's effective date. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) (Easterbrook, J.); *see also Fisher v. Fin. Am., LLC*, No. SA CV 05-0888, slip op. at 15 (C.D. Cal. Jan. 24, 2006) (holding that section 311(a) does not apply to conduct occurring before the effective date of the amendment). Because the question is not settled in the Ninth Circuit, this Court must assess whether the application of section 311(a) to Plaintiff will have impermissible retroactive effects.[1]

The Court's inquiry into the retroactivity of section 311(a) is guided by the two-step analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S. Ct. 1483 (1994). Under *Landgraf*, the Court must first examine the language of the statute "to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If the statutory language expressly provides for either prospective or retroactive application, then the Court is required "to give effect to the congressional will, subject only to constitutional constraints." *Koch v. SEC*, 177 F.3d 784, 786 (9th Cir. 1999). However, if the statute does not clearly specify its temporal reach, the Court must proceed to the second step in the *Landgraf* analysis, under which the Court determines "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party had when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. Any statute found to have retroactive effects is presumptively invalid, and will not govern absent a clear congressional mandate. *Id.* This presumption against retroactivity applies with equal force to new enactments and amendments to existing statutes. *Jones Stevedoring Co. v. Dir., Office of Workers Comp. Programs*, 133 F.3d 683, 687 (9th Cir. 1997).

---

[1] The Court recognizes that it previously ruled in *Phillips v. New Century Financial Corp.*, No. SA CV 05-0692, slip op. at 6-7 (C.D. Cal. Nov. 9, 2005), that the FACTA amendment did not have impermissible retroactive effects. However, the Court is reconsidering that issue. *See United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) ("[A] district court may reconsider its prior rulings so long as it retains jurisdiction over the case."); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (holding that district court had discretion to reconsider its own prior order *sua sponte*, and stating that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment.").

Exhibit G

In accordance with *Landgraf*, the Court examines the language of section 1681m to determine whether Congress expressly prescribed the statute's temporal reach. As amended by FACTA, section 1681m includes a new provision entitled "Enforcement," which merely states that "[t]his section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section." 15 U.S.C. § 1681m(h)(8)(B). Nothing in the text suggests that the enforcement provisions were meant to apply either prospectively or retrospectively, and the statute makes no explicit reference to its effect, if any, on pre-enactment conduct. Accordingly, the Court finds that section 311(a) of FACTA does not expressly prescribe its own temporal reach.

As such, the Court must address the second prong of the *Landgraf* test. Under this prong, the question is whether application of the statute will have retroactive effects. *Landgrag*, 511 U.S. at 280. As noted above, a statute has retroactive effects if it impairs rights that a party had when he or she acted. *Id.* Plaintiff claims that the application of the amendment to her would impair rights that she had when she received the letters, namely the right to sue for the lack of the required "clear and conspicuous" disclosures.

The Court agrees with Plaintiff that, under Ninth Circuit law, a statute eliminating a private right of action under a given law has a retroactive effect. A closely analogous situation to the one at hand was addressed in *Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000). In *Scott*, the Ninth Circuit determined that the new law, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "ha[d] retroactive effect because prior to the PSLRA a plaintiff had a RICO claim based on defendants' alleged securities fraud, while afterwards a plaintiff d[id] not." *Id.* at 944-45. The *Scott* court relied on "an alternative test endorsed in *Landgraf*" for its conclusion, concerning situations where "'new legal consequences [attach] to events completed before [a statute's] enactment.'" *Id.* at 946 (quoting *Landgraf*, 511 U.S. at 270). The *Scott* court then determined that because the legal consequences of the defendants' actions were different before and after the PSLRA– i.e., the defendants were previously subject to both federal securities violations and RICO violations, while after the amendment, the defendants' only liability for the same activity was for federal securities violations– the amendment had retroactive effect. *Id.* at 946-47.

Similar to *Scott*, the present case involves a scenario whereby defendants' actions gave rise to different legal consequences before and after the effective date of section 311(a). Before the amendment, consumers who received illegal credit solicitations could sue to ensure defendants' compliance with the law, whereas after FACTA, consumers could no longer sue privately and instead were forced to rely exclusively on administrative enforcement. *See* 15 U.S.C. §§ 1681m(h)(8), 1681s. The practical effect of the change is that an entire class of plaintiffs is eliminated, and defendants now face a significantly lesser chance of being held liable. *Cf. Hughes Aircraft Co. v. United States*, 520 U.S. 939, 949-52, 117 S. Ct. 1871 (1997) (holding that expansion of private right of action where the action was previously foreclosed affected the substantive rights of the parties and thus had retroactive effects under *Landgraf*). This constitutes impermissible retroactive effects and counsels against

Exhibit G

applying the amendment to bar Plaintiff's claim.

Furthermore, despite Defendant's argument to the contrary, it is clear that the focus should be on the date the conduct at issue took place, not the date that Plaintiff brought suit to effectuate her rights. *See Hughes Aircraft*, 520 U.S. at 947 ("[T]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal."); *Scott*, 215 F.3d at 949 ("[T]he *Landgraf* test . . . appears to focus on parties' actions, not the date of the filing of the claim. . . . The date of a filing of a claim does not appear relevant . . . ."). Defendant sent, and Plaintiff received, the allegedly illegal letter before the effective date of section 311(a). The receipt of that letter gave rise to Plaintiff's cause of action under the then-existing law. The fact that Plaintiff waited until after the amendment took effect to file suit does not vitiate the illegality of Defendant's conduct or bar Plaintiff's claim absent an applicable statute of limitations, which does not exist in the present case.

Finally, the Court does not agree that *Southwest Center for Biological Diversity v. United States Department of Agriculture*, 314 F.3d 1060 (9th Cir. 2002), governs this case. Initially, the Court notes that the facts here are significantly more closely analogized to *Scott* than to *Southwest*, as the issue at hand, like in *Scott*, concerns the elimination of a private right of action by statutory amendment. The Court admits that it is unclear whether the Ninth Circuit intended to add an additional requirement to the retroactivity analysis through its holding in *Southwest*, as Defendant appears to argue. *See* Def.'s Reply 5:23-24. What is clear, however, is that no court has ever cited *Southwest* for the proposition that there cannot be retroactive effects without proof that a plaintiff affirmatively acted in reliance on the prior law, as Defendant urges. The Court does not read the brief opinion in *Southwest* to have created a broad new rule of general applicability, but instead to have limited its holding to the facts before it. *See Southwest*, 314 F.3d at 1062. The Ninth Circuit has never cited *Southwest*, and the only two published opinions from district courts did not cite the case for the proposition that a showing of reliance is required. *See Cascadia Wildlands Project v. United States Forest Serv.*, 386 F. Supp. 2d 1149 (D. Or. 2005); *Akee v. Dow Chem. Co.*, 272 F. Supp. 2d 1112, 1125 (D. Haw. 2003). The Court concludes that *Scott*, not *Southwest*, governs this case.

Accordingly, the Court holds that the FACTA amendment eliminating the private right of action does not bar Plaintiff's claim because to hold otherwise would have impermissible retroactive effects under *Landgraf* and *Scott*. Defendant's Motion is therefore DENIED as to Plaintiff's second cause of action.

**B.    Declaratory and Injunctive Relief Under the FCRA**

Defendant argues that Plaintiff's third and fourth causes of action, for a declaration as to whether Defendant's business practices comply with the FCRA, seek a remedy not authorized by Congress. Defendant also asserts that Plaintiff's fifth and sixth causes of action, seeking injunctive

Exhibit G

relief to stop Defendant's alleged violations of the FCRA, similarly must be dismissed because injunctive relief is not provided for in the statute.

It is axiomatic that "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S. Ct. 2545 (1979). The question that is presented to the Court, therefore, is whether Congress has clearly indicated its desire to restrict the court's traditional equitable powers. Congress can tell the court of its intent to limit the court's power to provide equitable remedies through the literal text of a statute "or by a necessary and inescapable inference." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396 (1987) (internal quotation marks omitted).

Defendant urges the Court to infer from the structure and language of the statute that Congress knew how to authorize equitable relief for both public and private litigants when it wanted to, and specifically chose not to authorize such relief for private plaintiffs. Defendant focuses its argument on two provisions of the FCRA, sections 1681n and 1681o. The former provides a private right of action to consumers for instances of willful noncompliance with the FCRA, *see* 15 U.S.C. § 1681n, and the latter pertains to negligent noncompliance, *see id.* § 1681o. Notably, the provisions speak to only monetary relief and attorney's fees, saying nothing about equitable relief. "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242 (1979).

The conclusion that Congress made a decision not to permit private actions for equitable relief is further supported by other sections of FRCA that expressly authorize injunctive relief in other contexts, such as actions for civil enforcement of the statute brought by the Federal Trade Commission, *see id.* §§ 1681s(a), 45(b), and by certain state actors, *see id.* § 1681s(c)(1). Defendant also argues that section 1681u provides further proof of Congress's intent to limit equitable relief under the statute to public actors. Section 1681u permits the Federal Bureau of Investigations to obtain from consumer reporting agencies consumer reports under certain circumstances. *See id.* §§ 1681u(a). The same section authorizes consumers to sue the United States for violations of the aforementioned disclosure rules and provides for relief in the form of monetary damages and attorney's fees. *See id.* § 1681u(i). However, a different subsection of section 1681u also explicitly provides private litigants injunctive relief. *See id.* § 1681u(m). Thus, Defendant argues that the careful way in which Congress differentiated between private and public actors in authorizing specific forms of relief bolsters the conclusion that Congress intentionally circumscribed the court's historical equitable powers.

The Ninth Circuit has never addressed the question of whether the FCRA limits private plaintiffs' equitable relief. However, the vast majority of the courts which have considered the question, including the only circuit court to deal with the issue in any depth, have reached the conclusion that Congress clearly intended to limit equitable relief for private plaintiffs. *See, e.g.,*

Exhibit G

*Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263 (5th Cir. 2000) (holding there is no private right to seek injunctive and declaratory relief under the FCRA); *Yeagley v. Wells Fargo & Co.*, 2006 WL 193257 (N.D. Cal. Jan. 23, 2006) (same); *White v. First Am. Registry, Inc.*, 378 F. Supp. 2d 419 (S.D.N.Y. 2005); *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal. 2005) (same); *Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328 (N.D. Ill. 2002) (same); *Bumgardner v. Lite Cellular, Inc.*, 996 F. Supp. 525 (E.D. Va. 1998) (same); *Mangio v. Equifax, Inc.*, 887 F. Supp. 283 (S.D. Fla. 1995) (same); *Fisher*, No. SA CV 05-0888, slip op. at 15-16. But see *Natale v. TRW, Inc.*, 1999 WL 179678 (N.D. Cal. Mar. 30, 1999) (assuming without deciding equitable relief was available under the FCRA); *Wegner v. Trans Union Corp.*, 1995 U.S. Dist. LEXIS 22214 (C.D. Cal. Nov. 14, 1995) (allowing for the possibility that injunctive relief may be authorized under the FCRA without analyzing statute's structure).

Plaintiff asserts a number of arguments in opposition to the above argument, which has been adopted by a wide swath of courts at this point. Primarily, Plaintiff argues that Congress's grant of injunctive relief to the FTC in section 1681s(a) ought to be viewed solely as an expansion of the FTC's enforcement powers. However, Plaintiff misses the point. While this section of the FCRA surely does expand the FTC's powers, it is notable not for that fact, but rather for the clear demonstration that Congress knew how to expressly provide for equitable relief when it wanted to. "[T]he absence of any express provision for injunctive relief in Sections 1681n and 1681o, coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it." *White*, 378 F. Supp. 2d at 424; see also *Washington*, 199 F.3d at 268 (holding that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants" clearly demonstrates Congress's intent to limit equitable relief for private plaintiffs).

Plaintiff also argues that equitable relief under sections 1681n and 1681o is consistent with Congress's decision to permit individuals to sue the United States for injunctive relief under section 1681u. The tenor of this argument is that section 1681u is written as it is because Congress was concerned about the sovereign immunity of the government. This argument is entirely unpersuasive. In deciding the scope of the abrogation of the federal government's sovereign immunity, Congress could have elected to permit consumers to sue for a full array of remedies or a narrower range. In other words, Congress could simply have stopped after providing for monetary damages and attorney's fees in section 1681u(i). Instead, Congress added an additional subsection, see 15 U.S.C. § 1681u(m), that expressly authorized injunctive relief in addition to the remedies at law permitted in subsection (i). By contrast, Congress did not include any provision providing for equitable relief in either section 1681o or 1681n. The only way to give meaning to Congress's different treatment of these sections is to conclude that Congress intended to limit injunctive relief to state and federal agencies except where otherwise expressly provided.

MINUTES FORM 11 DOC    Initials of Deputy Clerk _____
CIVIL - GEN    Page 9 of 10

Exhibit G

Thus, the Court holds that sections 1681n and 1681o do not permit Plaintiff to obtain declaratory or injunctive relief. As such, Defendant's Motion as to claims three, four, five, and six is GRANTED.

## IV. DISPOSITION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion. The Motion is DENIED as to claim two, and GRANTED as to claims three, four, five, and six.

The Clerk shall serve this minute order on all parties to the action.

Exhibit G