IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDREW CROWDER, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:06cv0114-VPM |
| | ) | [WO] |
| PMI MORTGAGE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER ON MOTION**

Pending before the court is the defendant PMI Mortgage Insurance Company's

["PMI"] motion to dismiss (Doc. # 4) plaintiffs Andrew and Alisa Crowder's [collectively

"the Crowders"] complaint, which alleges that PMI violated the Fair Credit Reporting Act

["FCRA"] (Doc. # 1).[1]  15 U.S.C. § 1681 *et seq.* (2000).  The issues raised by PMI's motion

have been fully briefed by both parties (Docs. ## 5, 9, 14).  Upon review of the motion, the

supporting briefs filed by the parties, and the relevant law, the court finds that the motion

should be granted.

**I.    BACKGROUND AND FACTS**

On 26 July 2004, the Crowders purchased a home and executed a mortgage the terms

of which required them to secure mortgage insurance (Doc. # 1, p. 4). PMI issued the

---

[1]This lawsuit concerns the FCRA as amended by the Fair and Accurate Credit Transactions
Act of 2003 ["FACTA"], Pub. L. No. 108-159, 117 Stat. 1952 (codified in 20 U.S.C. §§ 1681 *et
seq.*).  For ease of reference, the court refers to the statute as codified as the "FCRA" and refers to
the "FACTA" only when discussing the amendments specifically.

mortgage insurance policy and, based upon information provided in the Crowders' credit history report, established a monthly insurance premium of $313.15. *Id.*

According to the Crowders, the premium established was not the lowest premium offered by PMI, and PMI failed to notify them of this fact as the Crowders contend PMI was required to do under the FCRA. *Id.*; *see* § 1681m. On 6 February 2006, the Crowders filed this lawsuit alleging willful and negligent violations of the FCRA and seeking actual, statutory and punitive damages, as well as costs and attorney fees. *Id.* The Crowders also seek declaratory and injunctive relief. *Id.*

## II.     STANDARD OF REVIEW FOR MOTION TO DISMISS

Pursuant to the Federal Rules of Civil Procedure, PMI moved to dismiss this action on the grounds that the Crowders have failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Countered by the exceedingly light burden imposed upon plaintiffs in asserting their legal claims,[2] motions of this sort are infrequently successful and may be granted only when "the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ***Harper v. Blockbuster Entm't Corp.***, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46 (1957)), ***cert. denied***, 525 U.S. 1000 (1998); *see also* ***St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.***, 795 F.2d 948, 953 (11th Cir. 1986) ("Although authorized by

---

[2]*See* Fed. R. Civ. P. 8(a).

the Federal Rules of Civil Procedure, the liberal rules as to the sufficiency of a complaint

make it a rare case in which a motion on this ground should be granted").

In assessing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as

true any allegations in the plaintiff's complaint. *See **Hishon v. King & Spalding***, 467 U.S.

69, 73 (1984); ***Ellis v. Gen. Motors Acceptance Corp.***, 160 F.3d 703, 706 (11th Cir. 1998).

> The plaintiff need not set forth all the facts upon which the
> claim is based; rather, a short and plain statement of the claim is
> sufficient if it gives the defendant fair notice of what the claim
> is and the grounds upon which it rests. A 12(b)(6) motion tests
> only the sufficiency of the claim set out in the plaintiff's
> pleadings. Denial of such a motion, therefore, does not indicate
> that the plaintiff will ultimately prevail on a claim which
> withstands a 12(b)(6) challenge.

***Harris v. Proctor & Gamble Cellulose Co.***, 73 F.3d 321, 324 (11th Cir. 1996) (citing ***Mann***

***v. Adams Realty Co., Inc.***, 556 F.2d 288, 293 (5th Cir.1977)).


## III.    ANALYSIS

### A.    *The Relevant Legislation and the Parties' Arguments*

Prior to the enactment of the FACTA, persons failing to comply with section 1681m

were subject to administrative and private enforcement actions 15 U.S.C. §§ 1681n

(providing a private right of action for willful failure to comply with the FCRA); 1681o

(providing a private right of action for negligent failure to comply with the FCRA); 1681s

(providing for administrative enforcement).  On 4 December 2003, in enacting the FACTA,

Congress amended section 1681m to eliminate private enforcement.

(8)   ENFORCEMENT. - -

(A)   NO CIVIL ACTIONS. - - Sections 616 and 617 [§§ 1681n, 1681o] shall not apply to any failure by any person to comply with this section.

(B)   ADMINISTRATIVE ENFORCEMENT. - - This section shall be enforced exclusively under section 621 [§ 1681s] by the Federal agencies and officials identified in that section.

§ 311, 117 Stat. 1952.[3]

With certain irrelevant exceptions, the FACTA did not provide for a specific date upon which its provisions would become effective.  Instead, Congress directed the Board of Governors of the Federal Reserve System and the Federal Trade Commission as follows:

(1)   before the end of the 2-month period beginning on the date of enactment of this Act, . . . prescribe regulations in final form establishing effective dates for each provision . . .; and

(2)   the regulations prescribed under paragraph (1) shall establish effective dates that are as early as possible, while allowing a reasonable time for the implementation of the provisions of this Act, but in no case shall any such effective date be later than 10 months after the date of issuance of such regulations in final form.

§ 3, 117 Stat. 1952.

Pursuant to the Legislature's directive, the agencies adopted a regulation that gave effect to the relevant provision as of 1 December 2004, approximately 14 months before the

---

[3]Congress eliminated or limited private civil liability for noncompliance with other provisions as well. *See*  § 151(a)(1), 117 Stat. 1952 (codified in relevant part at 15 U.S.C. § 1681g(e)(6)-(7)); § 312, 117 Stat. 1952 (codified in relevant part at 15 U.S.C. § 1681s-2(c)-(d)).

Crowders filed this lawsuit (Doc. # 1).  16 C.F.R. § 602.1; *see* FACTA, Pub. L. No. 108-

159, §§ 3 and 311, 117 Stat. 1952.

PMI contends that the FACTA amendments foreclose this lawsuit, in which the

Crowders allege that PMI failed to comply only with section 1681m (Docs. ## 1, 4, 5, 14).

In addition, and for different reasons, PMI contends that the Crowders also are precluded

from seeking declaratory and injunctive relief under the FCRA (Doc. # 5).

The Crowders concede that declaratory and injunctive relief are not available to them

(Doc. # 9-1, p. 2).  Moreover, they "do not contend that the enforcement provision changes

did not eliminate private actions concerning conduct that arose after December 1, 2004"

(Doc. # 9-1, p. 4).[4]  They contend nevertheless that the bar to private enforcement does not

apply in this case because PMI's noncompliance preceded the effective date of the relevant

---

[4]Federal courts have struggled with the issue of whether the limitation in section 1681m(h)(8) applies to 1681m in its entirety or solely to subsection 1681m(h). *Contrast*, *e.g.*, **Bruce v. Wells Fargo Bank, N.A.**, No. 2: 05 cv 243 PS, 2006 WL 1195210, at *2 (N.D. Ind. May 2, 2006) (finding that it applies to 1681m in whole) *with* **Barnette v. Brook Road, Inc.**, No. 3: 05 cv 590, 2006 WL 1195913 (E.D. Va. May 3, 2006) (finding that it applies only to 1681m(h)).

A conclusion that it applies only to the relevant subsection would result in a finding in favor of the Crowders because their cause of action arguably arises under section 1681m(a).  As the cases cited immediately *supra* demonstrate, a reasonable argument exists that the bar does not apply to 1681m(a), but the Crowders have failed to so argue.

As a matter of semantics, the Crowders' declining to "contend" that the bar to private enforcement did not eliminate all private actions under 1681m arguably falls short of a concession that it did.  The court, however, is not interested in non-legislative semantic nuances.  Therefore, the Crowders' acknowledgment of the issue without argument leads the court to conclude that the Crowders concede the point. Consequently, the court need not address the issue, and, for the purpose of the law of this case, it is irrelevant.  The court simply assumes that there is no private right of action for failure to comply with section 1681m.

provision, and "there is no reason to believe that the new changes bar private actions concerning conduct that" occurred prior to 1 December 2004 (Doc. # 9-1, p. 4).  Therefore, they conclude that application of the bar to preclude their lawsuit would be impermissibly retrospective.

In reply, PMI contends that whether the bar may be applied retroactively is not at issue because 1681m(h)(8) does not address the conduct giving rise to a cause of action and concerns only the ability to bring a civil action, which, in this case, was filed well after the bar's effective date.

**B.      *The Rule Against Retroactivity***

As a general rule, "[a] court is to apply the law in effect at the time it renders its decision . . .." ***Bradley v. Sch. Bd. of City of Richmond***, 416 U.S. 696, 711 (1974) *quoted in* ***Fed. Deposit Ins. Corp. v. 232, Inc.***, 920 F.2d 815, 818 (11th Cir. 1991).  Occasionally, application of this long-held principle would contravene another one, namely the "'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place.'" ***Landgraf v. USI Film Prods.***, 511 U.S. 244, 265 (1994) (quoting ***Kaiser Aluminum & Chem. Corp. v. Bonjorno***, 494 U.S. 827, 855 (1990)).

Resolving the conflict, the Supreme Court concluded in ***Landgraf*** that the former must give way to the latter when application of the law in effect at the time of the court's decision would operate retroactively unless Congress evidences a clear intent that the statute

at issue is to so apply.  511 U.S. at 265;[5] *see also* **Hughes Aircraft Co. v. United States ex**

**rel.** *Schumer*, 520 U.S. 939, 946 (1997) (requiring "clear" Congressional intent).

The Court of Appeals recently explained that

> [f]irst, we must examine "whether Congress has expressly
> prescribed the statute's proper reach."  *Landgraf v. USI Film*
> *Prods.*, 511 U.S. 244, 280 (1994).  When Congress does not
> expressly address the issue of retroactivity in the statute, as with
> the TVPA, then we employ normal rules of statutory
> construction to ascertain the temporal scope of the statute. *Craig*
> *v. Eberly*, 164 F.3d 490, 494 (10th Cir. 1998) (internal citations
> omitted).  Third, if the statute's temporal scope cannot be
> determined by means of normal statutory interpretation methods,
> then we must consider whether the statute has a retroactive
> effect.  *Lindh v. Murphy*, 521 U.S. 320, 325-26 (1997).

*Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1154 (11th Cir. 2005) (parallel citations

omitted).

### D.     *The Temporal Reach of Section 1681m(h)(8)*

Contrary to the Crowders' contention, and notwithstanding the failure of both parties

as well as most courts addressing the issue to mention it, there is in fact reason to believe that

---

[5]The Court's stated rationale was that

> the presumption against retroactive legislation is deeply rooted in our
> jurisprudence, and embodies a legal doctrine centuries older than our
> Republic.   Elementary considerations of fairness dictate that
> individuals should have an opportunity to know what the law is and
> to conform their conduct accordingly; settled expectations should not
> be lightly disrupted.

*Id.*

Congress intended for the bar to apply to conduct occurring prior to 1 December 2004.

Section 312(f) of the FACTA provides:

> RULE OF CONSTRUCTION. - - Nothing in this section, the amendments made by this section, *or any other provision of this Act* shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. 1681n, 1681o) *that existed on the day before the date of* <u>enactment</u> *of this act.*

117 Stat. 1952 (emphasis added).[6]

This provision buttresses the conclusion that Congress did not intend for the bar to private civil lawsuits to apply to conduct giving rise to private civil liability *before 4 December* <u>*2003*</u>. Giving Congress the benefit of any doubt about its ability to distinguish the date of enactment from the effective date, the logical inference to be drawn is that Congress intended to bar private civil actions filed *after* the relevant effective date (1 December 2004) when the conduct occurred *after 3 December 2003*.[7]   With this in mind, section 312(f)

---

[6]At the time this opinion was entered, the only mention of this section in the cases addressing the relevant issues comes from the Eastern District of Virginia in the opinion finding that section 1681m(h)(8) applies only to 1681m(h). **Barnette**, 2006 WL 1195913 at \*4 (describing section 312(f) as "a provision unexamined by any court addressing the FACTA amendments to date").

[7]Notably, because the FCRA and the FACTA provide for administrative enforcement, courts construe sections 616 and 617 as providing the only avenues for private enforcement. **Kekich v. Travelers Indem. Co.**, 64 F.R.D. 660 (W.D. Pa. 1974) ("Given the fact that the FTC has the express power to enforce noncompliance, if indeed the defendant has been systematically violating the Act, there appears to be no reason for a private attorney general, an office which the plaintiff seems to have assumed.") *cited approvingly in* **Jones v. Sonic Automotive, Inc.**, 391 F. Supp. 2d 1064, 1065 (M.D. Ala. 2005) (Fuller, J.) (restricting private enforcement of the FCRA to the extent expressly allowed and, conversely, limited by sections 616 and 617) (citing also **Washington v. CSC Credit Svcs., Inc.**, 199 F.3d 263, 268 (5th Cir. 2000) ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."), ***cert. denied*** 530

prohibits applying the bar to private enforcement to conduct giving rise to a cause of action (and, consequently, administrative enforcement as well) that occurred prior to the FACTA's enactment without regard to the effective date of the FACTA's provisions or the date on which the civil lawsuit is filed, assuming, of course, it is not otherwise time barred.

In other words, had PMI issued the mortgage insurance policy on 3 December 2003, the Crowders could have filed their lawsuit after the bar became effective so long as they complied with the appropriate time limitations.  Because PMI issued the policy after 4 December 2003, however, the Crowders could file a lawsuit only until the date that the amendments became effective.  They failed to do so.  Their lawsuit is therefore precluded.

To be sure, the intent assigned to Congress (based on the court's reading of section 312(f)) is inferential.  For this reason, the court continues its analysis under the framework set out in *Cabello*.  Because the court concludes that the canons of statutory construction offer no aid, the court turns its attention to whether application of the bar would have a retroactive effect.

### E.    *Retroactive Effect*

Unfortunately, "deciding when a statute operates 'retroactively' is not always a simple or mechanical task."    *Landgraf*, 511 U.S. at 268.    "A statute does not operate

---

U.S. 1261 (2000)).

'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." *Id.* at 269-70 (citing ***Republic Nat'l Bank of Miami v. United States***, 506 U.S. 80, 100 (1992) (Thomas, J., concurring in part and concurring in judgment)).

On the contrary, as the Crowders acknowledge, "[a] statute has a retroactive effect if it 'would impair rights *a party possessed <u>when he acted</u>*, <u>*increase*</u> a party's liability for past conduct, or impose new duties with respect to transactions already completed'" (Doc. # 9-1, p. 5, quoting ***Landgraf***, 511 U.S. at 280) (emphasis added).  Despite the Crowders' best semantic efforts to characterize the harm they claim would befall them if the bar is applied in this case, the court is not persuaded that applying the bar would have the retroactive effects with which the Supreme Court is concerned.[8]

Importantly, when the Crowders acted, *i.e.*, filed their lawsuit, the right to file a private civil action to redress noncompliance with section 1681m had long since expired. Nor does application of the bar upset the parties' reasonable expectations at the time the conduct occurred, which followed FACTA's enactment by approximately six months.  In addition, applying the bar does not "increase" either parties' liability or responsibilities.

"Application of new statutes passed after the events in suit is unquestionably proper in many situations." ***Landgraf***, 511 U.S. at 273.  The situation before the court is one of

---

[8]Notably, as the Crowders acknowledge, both ***Landgraf*** and ***Hughes Aircraft*** concerned legislation that created or increased liability or exposure to potential liability for past conduct. FACTA, on the other hand, did not augment liability.

them.[9]

Although the cases cited by the parties are not on point, and the Court of Appeals has not addressed the precise issues presented in this case, the court's ultimate conclusion is buttressed by the cases cited by PMI.  *See **Fla. Evergreen Foliage v. E.I. du Pont de Nemours & Co.**, 165 F. Supp. 2d 1345 (S.D. Fla. 2001); **Kolfenbach v. Mansour**, 36 F. Supp. 2d 1351 (S.D. Fla. 1999).  **Kolfenbach** is particularly instructive.

The plaintiff in **Kolfenbach** argued that legislation that eliminated civil claims for securities fraud under the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. §§ 1961-68 (2000) should not preclude the lawsuit at issue, which, though filed after the legislation went into effect, related to conduct that occurred before its enactment. The court disagreed.

> If there was ever a right embodied in a securities fraud-based civil RICO cause of action, it was only the right to pursue a claim that had already been filed *before* the 1995 Reform Act

---

[9]Generally, one who acts pursuant to a right conferred by legislative act exercises that right at the pleasure of the legislature.  *See, e.g.*, **Ellis v. Gen. Motors Acceptance Corp.**, 160 F.3d 703, 706 (11th Cir. 1998) ("When Congress enacts statutes creating public rights or benefits, it can impose time limits on their availability.  These time limits can either completely extinguish the right or simply bar the remedy for enforcement."); **Gen. Motors Acceptance Corp. v. Saliba**, 260 F.2d 262, 263 (5th Cir. 1958) (adopting the view that "no one has a vested right in statutory privileges and exemptions, and that until final judgment on a pending action, the repeal of the statute, which gives the right of action, or upon which the suit is predicated, destroys it"); **Battaglia v. Gen. Motors Corp.**, 169 F.2d 254 (2d Cir. 1948) (stating that statutory claims that "had not ripened into final judgment . . . were subject to whatever action Congress might take with respect to them" regardless of "whether the activities on which they were based had been performed") (citing, *inter alia*, **Western Union Tel. Co. v. Louisville & Nashville RR. Co.**, 258 U.S. 13 (1922)).

Notably, the Crowders do not contend that application of the bar would violate their Constitutional rights.

>came into effect. Plaintiff has offered no authority to support
>the proposition that there is an inviolable right to preserve the
>mere possibility of bringing a claim.

*Kolfenbach*, 36 F. Supp. 2d at 1354. Consequently, the court determined that the plaintiff

could not maintain the cause of action.

The cases cited by the Crowders, on the other hand, are not persuasive. *Murray v.*

*GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), arrived at the conclusion the

Crowders seek here without lending any insight into the court's rationale. Moreover, the

other cases cited, none of which have been reported, appear to adopt the Crowders' faulty

logic. *Phillips v. New Century Fin. Corp.*, No. SACV050692DOVRNBX, 2006 WL 517653

at *5 (C.D. Cal. Mar. 1, 2006); *Fisher v. Finance Am., LLC*, No. CV-05-0888-CJC at 9

(N.D. Cal. Jan. 23, 2006) (attached to pl's brief as Ex. F); *Parthiban v. GMAC Mortgage*

*Corp.*, No. CV-05-768-DOC at 6 (C.D. Cal. Mar. 1, 2006).

>The conclusion that a particular rule operates "retroactively"
>comes at the end of a process of judgment concerning the nature
>and extent of the change in the law and the degree of connection
>between the operation of the new rule and a relevant past event.
>Any test of retroactivity will leave room for disagreement in
>hard cases, and is unlikely to classify the enormous variety of
>legal changes with perfect philosophical clarity. However,
>retroactivity is a matter on which judges tend to have "sound . 
>. . instinct[s]," see *Danforth v. Groton Water Co.*, 59 N.E. 1033,
>1034 (Mass. 1901), and familiar considerations of fair notice,
>reasonable reliance, and settled expectations offer sound
>guidance.

*Landgraf*, 511 U.S. at 269-70.

The judicial instincts operative in this case support the conclusion that giving effect

to section 1681m(h)(8) to preclude the Crowders' lawsuit would not be impermissibly retroactive. Therefore, the law currently in existence   - i.e., no private right of action - must apply, and the Crowders consequently have failed to state a claim upon which relief can be granted.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the defendant's motion to dismiss the plaintiff's complaint is GRANTED. The plaintiff's complaint is DISMISSED with prejudice, and the Clerk of Court is DIRECTED to terminate all pending motions and close this case.

DONE this 26th day of May, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE